UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

WINSTON FRANCIS,  :

            Petitioner,  :

     -against-  : **REPORT AND RECOMMENDATION**

LARRY SEARS,  : 06 Civ. 2923 (CM)(KNF)

            Respondent.  :
------------------------------------------------------------ X

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE COLLEEN MCMAHON, UNITED STATES DISTRICT JUDGE

## INTRODUCTION

Winston Francis ("Francis"), proceeding pro se, filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, alleging his confinement by New York State is unlawful because: (1) his due process rights were violated, when the trial court refused to give a missing witness instruction to the jury; (2) the trial court's failure to instruct the jury on the defense of justification violated his rights to due process and a fair trial; (3) the prosecutor's statements, during summation, and the trial court's denial of his mistrial motion, based on the prosecutor's summation, violated his rights to due process and a fair trial; (4) his Sixth Amendment and Fourteenth Amendment rights were violated, when the trial court restricted, improperly, the cross-examination of the victim; and (5) the cumulative effect of the errors committed by the prosecutor and the trial court during the trial, noted above, deprived him of his right to a fair trial. The respondent opposed the petition contending that the state-court's decision on the petitioner's

5/7/08 No objections have been received, and no extension of time having been granted, the motion is ripe for determination. The Court adopts the Report as its opinion and dismisses the petition. As Petitioner has made no substantial showing of the denial of a constitutional right, no certificate of appealability shall issue. I certify that an appeal from this order would not be taken in good faith. 28 USC §1915(a).

claims was neither contrary to nor an unreasonable application of clearly established federal law.

## BACKGROUND

On September 13, 2002, at approximately 5:00 p.m., Juma Williams ("J. Williams") exited a restaurant on West 155th Street in Manhattan. His brother, Rafiq Williams ("R. Williams"), was waiting for him outside of the restaurant. As J. Williams exited the restaurant, he heard a man, petitioner Francis, yelling: "Nobody better not take my bike, nobody better not take my bike." J. Williams turned to see whom Francis was addressing. When he turned back, Francis was standing face-to-face with him and was yelling the same ecphonesis. J. Williams said: "What are you talking about, nobody is trying to take your bike." Thereafter, Francis pushed J. Williams, who lost his balance. As he did so, J. Williams punched Francis, fisticuffs ensued, and they fell to the ground.

While J. Williams was punching Francis, Francis sliced the back of J. William's neck with a razor, causing him to bleed. After seeing blood on his shirt and feeling a burning sensation, J. Williams screamed: "I'm cut." He held Francis' hands and observed the razor between Francis' index finger and his thumb. At that point, R. Williams came to his brother's aid. He picked up Francis' bicycle, threw it at Francis several times and pulled Francis' sweater over his face to block his vision. R. Williams also punched Francis, while making a vain attempt to remove the razor from Francis' hand. Thereafter, the two brothers fled the scene and traveled to Columbia Presbyterian Hospital.

Police Officer Hans Lafontain ("Lafontain") received a radio transmission about the incident on West 155th Street, and went to that location. When he arrived, an ambulance attendant was treating Francis. Francis told Lafontain he had been robbed and assaulted.

2

Lafontain transported Francis to Columbia Presbyterian Hospital, for treatment of a swollen nose and a small laceration on his index finger. While at the hospital, a canvass was conducted to attempt to locate the perpetrators. Francis spotted the Williams brothers and identified them to the officer as the perpetrators of the robbery and assault. After J. Williams received treatment for his neck injury, the two brothers and Francis were arrested and taken to a local police precinct. While in the precinct, Francis threatened J. Williams. The following day, the three men were interviewed by, and gave written statements to, personnel from the New York County District Attorney's Office. Thereafter, the Williams brothers were released from custody; Francis was not.

A New York County grand jury charged Francis with second-degree assault and third-degree criminal possession of a weapon. A jury trial was conducted, at which the prosecution failed to call R. Williams as a witness, after giving notice of its intention of doing so.

On the day J. Williams was scheduled to testify, the court informed the parties that he was involved in a fist-fight the previous night. Francis sought to cross-examine J. Williams regarding that incident but the court denied his request, determining that it was irrelevant and it would protract the trial needlessly.

During his summation, the prosecutor made certain statements to which Francis objected, but his objections were overruled. The prosecutor stated, <u>inter alia</u>, "[I]f [other] people [were present at the altercation and] possessed [] evidence that would exonerate [him]. He has no burden. Don't you think he would have called them?" The prosecutor also stated, among other things: (1) "[The] evidence [that Francis took the razor out of his pocket] is uncontradicted. Mr. Williams got on the stand. You saw him. He put his hand in his pocket. No question about that.

3

Totally uncontradicted. Not unchallenged;" (2) "[The New York County District Attorney's Office] gave everybody a chance to tell their story and [it] determined that [Francis'] story wasn't true. That's why he is sitting here. That's why;" and (3) "This is a weapon that [Francis] had because he's the kind of a guy walking down the street cursing, challenging people, and that kind of person brings a weapon with them because he knows he will be in a fight." Francis made an application for a mistrial, because "[t]he totality of [the prosecutor's] summation basically placed the burden of proof on the defense." The trial court denied the application.

On September 23, 2003, Francis was convicted on both charges. On November 20, 2003, Francis was sentenced, as a second-felony offender, to concurrent, determinate terms of seven years imprisonment on each conviction. On December 13, 2003, Francis was resentenced, on the third-degree criminal possession of a weapon conviction, to an indeterminate term of three and one-half years to seven years imprisonment, to run concurrently with the sentence of seven years imprisonment he received for the second-degree assault conviction.

Francis appealed to the New York State Supreme Court, Appellate Division, First Department, from the judgment of conviction, arguing: (1) the trial court's refusal to give a missing witness instruction to the jury, with respect to the prosecution's failure to call R. Williams as a trial witness, violated his due process rights; (2) the trial court's failure to instruct the jury on the defense of justification violated his right to due process and deprived him of a fair trial; (3) the prosecutor's improper statements during summation violated his due process rights, and the court erred in denying his mistrial motion based on the prosecutor's summation; (4) his due process rights were violated, when the trial court restricted, improperly, the cross-examination of the victim; and (5) the cumulative effect of the numerous errors committed by the

4

prosecutor and the trial court amounted to reversible error. On February 24, 2005, the Appellate Division affirmed the conviction, finding that: (1) the trial court denied Francis' request for a jury instruction on the defense of justification properly because, when viewed in the light most favorable to Francis, the record evidence did not reasonably support that defense; (2) the trial court was not required to give a missing witness jury instruction, but even if it had been appropriate to give it, the court's failure to do so would be a harmless error; (3) although some of the prosecutor's statements during summation "were inadvisable," the summation "generally constituted fair comment on the evidence, and reasonable inferences to be drawn therefrom," and did not deprive Francis of a fair trial; (4) the trial court exercised its discretion properly in precluding Francis from cross-examining the victim about the fight in which he was engaged shortly before he testified at the trial, because Francis failed to establish a good-faith basis upon which to conclude that the incident constituted a "bad act" or had any relevance to the victim's credibility or to any other material issue; thus Francis's confrontation right was not impaired. See People v. Francis, 15 A.D.3d 318, 790 N.Y.S.2d 103 (App. Div. 1st Dep't 2005). On April 28, 2005, the New York Court of Appeals denied Francis' request for leave to appeal to that court. See People v. Francis, 4 N.Y.3d 853, 797 N.Y.S.2d 427 (2005). The instant petition followed.

## DISCUSSION

*Standard of Review*

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;

5

or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. 2254(d).

A state-court decision is "contrary to" the Supreme Court's precedent: (1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law;" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that reached by the Supreme Court. Williams v. Taylor, 529 U.S. 362, 405, 120 S. Ct. 1495, 1519 (2000). A state-court decision involves an "unreasonable application" of clearly established federal law, as determined by the Supreme Court, if: (1) "the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;" or (2) "the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id., at 407, 120 S. Ct. at 1520.

A habeas corpus petitioner bears the burden of proving, by a preponderance of the evidence, that a violation of his constitutional rights occurred. See Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997). If a state prisoner's federal claim was adjudicated on the merits, a federal court must presume any determination of a factual issue made by a state court to be correct and a habeas corpus petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

The Appellate Division reviewed and rejected, on the merits, Francis' claims. In support of his habeas corpus petition Francis repeats the same arguments he presented to the Appellate

6

Division. However, Francis failed to identify how the state-court decision on his claims was either contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court. Furthermore, Francis failed to show that the state court's decision on his claims is grounded on an unreasonable determination of the facts. Additionally, Francis did not present any evidence to the Court that rebuts the presumption of correctness accorded to the factual findings made in the state court respecting his claims. See 28 U.S.C. § 2254(e)(1). Therefore, the Court finds that Francis failed to meet the burden imposed on him by the relevant statute. Consequently, he is not entitled to habeas corpus relief based on his claims that have been adjudicated, on the merits, by the state court.

## RECOMMENDATION

For the foregoing reasons, I recommend that the petition be denied.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Colleen McMahon, 500 Centre Street, Room 640, New York, New York, 10007, and to the chambers of the undersigned, 40 Foley Square, Room 540, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge McMahon. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. See Thomas v. Arn, 474 U.S. 140 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Reynoso,

7

968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988);

McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
April 11, 2008

Respectfully submitted,

*Kevin Nathaniel Fox*

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

Copies mailed to:

Winston Francis
Alyson Gill, Esq.